Anna Murphy

*v.*

The People of the State of Illinois.

*Opinion filed December 22, 1904.*

1. Evidence—*what essential to admission of church records.* It is essential to the admission of church records in evidence, in any event, that it be made to appear that the entries were made by the person whose duty it was to make them.

2. Marriage—*it is not presumed that party was guilty of bigamy.* It will not be presumed, in aid of an alleged common law marriage, that the subsequent ceremonial marriage of one of the parties was a bigamous one, since the presumption is in favor of his innocence and of the validity of the marriage formally solemnized.

3. Same—*when alleged statements tending to prove a common law marriage are overcome.* Alleged oral statements by the father as to the legitimacy of a child, relied upon as showing a common law marriage with her mother, are overcome by proof that he described her in his will as the daughter of the woman who "claims said Anna to be my child," and by the fact that such woman, neither in his lifetime nor after his death, ever asserted any legal rights as his wife or widow.

Appeal from the County Court of Cook county; the Hon. Orrin N. Carter, Judge, presiding.

J. S. Dudley, for appellant.

H. J. Hamlin, Attorney General, (E. M. Ashcraft, of counsel,) for the People.

Mr. Justice Boggs delivered the opinion of the court:

Bernard VonGlahn, late of Cook county, deceased, by his will dated December 24, 1901, bequeathed the sum of $8000 to Anna Murphy, the appellant. An inheritance tax of three dollars per $100 on said legacy of $8000, being the sum of $240, was ordered by the county court of Cook county to be deducted by the executor of said deceased from said legacy and paid to the county treasurer of Cook county.

Section 1 of the Revenue act (3 Starr & Cur. Stat. p. 3528,) directs that the rate of inheritance tax on legacies to a niece of the testator shall be two dollars on each $100 in excess of $2000. The appellant claimed that Hildebrand August VonGlahn, a brother of the testator, and one Mrs. Martha McCabe, a widow, were husband and wife and that she was born of that union, and was therefore the niece of the testator and entitled to have $2000 of said legacy free from inheritance tax, and that only two dollars on the $100 of the remainder of said legacy could be lawfully deducted therefrom. Upon a hearing the county court of Cook county declared that it was not established that Hildebrand August VonGlahn and Mrs. Martha McCabe, the mother of appellant, were husband and wife, and consequently that it did not appear that appellant was the niece of the said Bernard VonGlahn, and directed the inheritance tax to be deducted from the legacy and paid into the county treasury at the rate of three dollars on each $100 of the full amount of the legacy.

The appellant was born of the body of said Martha McCabe, and it was quite well established that said Hildebrand August VonGlahn was her father, but we agree with the county court that it was not shown that the marriage relation existed between said Hildebrand August VonGlahn and said Martha McCabe. The appellant sought to prove that a marriage ceremony was celebrated between said Hildebrand August VonGlahn and said Martha McCabe at St. Andrew's catholic church in New York, in May, 1850, and that she was the only issue of that marriage. A book purporting to contain the records of marriages celebrated in said St. Andrew's catholic church from April 15, 1842, to November 1, 1851, was offered in evidence, on one of the pages whereof appeared what purported to be the record of the celebration of the marriage of one August VonGlahn and Martha McCabe by Father Michael Curran, the pastor or rector of said church, on the 20th or 23d day of May, 1850.

The court refused to receive the book in evidence. It is not contended that any other competent or sufficient evidence of a ceremonial marriage between the parties was produced, but it is urged that the court erred in refusing to admit the church record in evidence.

The laws of the State of New York in force at the time of the alleged entries in the record of the church did not require that pastors of churches should keep a record of marriages celebrated by them, nor did such laws authorize the introduction in evidence of such records as a means of proving a marriage. Father Curran had departed this life long prior to the hearing of the cause. It seems to have been the view of the trial judge that in cases where, as here, the pastor who it is alleged had made the entries in the record of the church was not living, it was essential to the admissibility of the record in evidence that it should be shown that the record was in the handwriting of such pastor. Evidence was heard upon that question, and the court held it was not proven that the entry in question was in the handwriting of the rector, Father Curran. Without being understood as ruling at all on the question whether the church records would have been admissible in any event, it is quite clear from all authorities upon the question that it is requisite to the admission of such records that it shall be made to appear that the entries were made by the person whose duty it was to make them. (1 Greenleaf on Evidence, sec. 485; *Kennedy* v. *Doyle*, 10 Allen, 161.) We concur in the conclusion reached by the trial judge that the evidence did not justify the view that the entry in question in the church record was in the handwriting of the pastor, Father Curran.

A photograph of the page of the church record on which were the entries of marriages from May 17 to June 13, 1850, both inclusive, has been incorporated in the record for our inspection. The entries of twelve marriages conceded to be in the handwriting of Father Curran appear on the page in addition to the entry in dispute. Three witnesses, experts

in handwriting, testified that in their opinion the body of the disputed entry was not in the handwriting of Father Curran. Documents conceded to be in the handwriting of appellant were without objection submitted to the inspection of the experts, and all expressed the opinion that the body of the disputed entry was in the handwriting of appellant. It was the opinion of the expert witnesses that the entry in dispute had been written on the page many years after the other entries thereon. Two of the expert witnesses testified that an ingredient used in compounding the ink with which the disputed entry was written was not in use in making ink in 1850, when that entry purported to have been made, and that such ingredient was not used in making inks until 1890,—about forty years after the purported time of the entry. We have examined the photographic page of the record. The writing in the disputed entry is so plainly different from that of the other entries made by Father Curran as to attract the attention at but a casual glance. The difficulty in comparing the writing of the disputed and the other entries is not to detect points of difference, but to find any points of resemblance. The entry in dispute is near the center of the page and in a space that, if it is a forgery, must have been left unfilled by Father Curran. Counsel for appellant urges this fact as strongly indicating that the entry was regularly made and is not a forgery. A close inspection deprives this suggestion of all of its force. On the margin at the left side of the space on the page there appears in writing the date "20" and the words "hurried off." These figures and words are in the same handwriting as all of the other entries made by Father Curran. A figure "3" has been written over the "o" in the date, leaving the "o" however still plainly discernible. We have no doubt from the appearance of the page that on the 20th day of May, 1850, Father Curran began to make an entry of a marriage on the page where the disputed entry now appears, but that the parties "hurried off" without having the ceremony completed, or they were or he was "hurried off" be-

fore he had time to complete the record. He therefore wrote the words "hurried off" just below the date "20," and thus it was, no doubt, that the blank space was left between the entries on the page. That the entry was written in this blank space by some other person than Father Curran does not admit of any doubt.

We concur in the view reached by the learned trial judge that the other proof in the record is not sufficient to justify the conclusion that Hildebrand August VonGlahn and Martha McCabe bore the relation of husband and wife. We find testimony in the record tending to prove, and other testimony tending to disprove, the fact of such marriage by general reputation. The repute of marriage was based almost wholly on alleged statements of Hildebrand August VonGlahn. The testimony of appellant tended to show cohabitation matrimonial in character in 1863. She was then of the age of seven years. That said VonGlahn had had sexual intercourse with the mother of the appellant in New York City and believed that the appellant was the fruit of such intercourse is well established from his statements. The appellant came to Chicago, where he lived, when she was about fourteen years of age and he gave her money, and after she returned to New York he caused her to be educated at his expense and provided for her until his death. She visited him in Chicago during her vacations, and there is much force in the suggestion of counsel that his statements made to friends in Chicago, relied upon to prove his marriage with her mother, were made to shield the appellant from the imputation of illegitimacy. In his will he bequeathed to her the income for life accruing on a fund of $10,000, the principal whereof he directed should be paid "to her children lawfully begotten." In this bequest the appellant is expressly described by the testator as "Anna, daughter of Martha McCabe, who claims said Anna to be my child." The declarations of the father, in his will, as to the legitimacy of his child impress us as the better guide to the real truth of the

matter than the oral statements made by him, as testified to by the witnesses. The declarations in the will are inconsistent with the existence of the marriage relation of the testator and Martha McCabe. The conduct of said VonGlahn was also inconsistent with the existence of such marriage relation, unless the presumption be indulged that he willfully committed bigamy. On the 8th day of August, 1863, while, as he then knew, said Martha McCabe was still living, he entered into the marriage relation with Matilda Busse in Chicago, and such marriage was celebrated by ceremonials and lawful forms. The issue of that marriage was one son, who is still living. Said VonGlahn lived in the city of Chicago during the remainder of his lifetime. His death occurred on the 5th day of April, 1874. We are not to presume that he was guilty of bigamy, but the presumption is in favor of his innocence and of the legality of the marriage which was formally solemnized. (19 Am. & Eng. Ency. of Law, —2d ed.—p. 1206.) Martha McCabe survived VonGlahn more than twelve years. She lived during the last five or six years of her lifetime in Chicago, but did not seek to enforce any right, as widow, against his estate, though he was the owner of valuable property at the time of his death. Nor is it shown that she ever, at any time during her lifetime, attempted to assert any legal right under the marriage relation. The presumptions of a prior marriage with Martha McCabe are too weak to be allowed to operate to render void the duly solemnized marriage between Hildebrand August VonGlahn and Matilda Busse.

The order and judgment of the county court are affirmed.

*Judgment affirmed.*